# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| DEBRA JONES, individually and as the natural parent of Todd R. Murray, and as personal representative of the Estate of Todd R. Murray, deceased, for and on behalf of the heirs of Todd R. Murray, and ARDEN C. POST, individually and as the natural parent of Todd R. Murray,<br><br>        Plaintiffs,<br><br>v.<br><br>VANCE NORTON, Vernal City police officer, VERNAL CITY, BLACKBURN COMPANY, DAVE SWENSON, in his individual capacity, CRAIG YOUNG, in his individual capacity, REX OLSEN, in his individual capacity, JEFF CHUGG, in his individual capacity, ANTHONEY BYRON, in his individual capacity, BEVAN WATKINS, in his individual capacity, TROY SLAUGH, in his individual capacity, and SEAN DAVIS, in his individual capacity,<br><br>        Defendants. | **MEMORANDUM DECISION and ORDER**<br><br>Case No. 2:09-cv-00730-TC-SA<br><br>Judge Tena Campbell |

The Plaintiffs have filed this lawsuit against various Defendants in connection with the shooting death of Todd R. Mr. Murray which occurred while he was being pursued by police on the Uintah-Ouray Indian Reservation. Defendants Vance Norton and Vernal City move to dismiss the claims against them.

The court holds that Detective Norton did not have jurisdiction to seize Mr. Murray. Because there are disputed issues of fact concerning whether Mr. Murray was seized and whether exigent circumstances justified the seizure if it occurred, the court DENIES Defendants' motion

to dismiss the § 1983 claims. But the court holds that the Utah Governmental Immunity Act applies to state law enforcement on Indian reservations and accordingly GRANTS Defendants' motion to dismiss the state law claims.

**BACKGROUND**[1]

On April 1, 2007, Trooper Dave Swenson, a state trooper with the Utah Highway Patrol was driving on Highway 40 in Uintah County when he saw "two Tribal males," Uriah Kurip and Todd Murray, in a car traveling 74 miles an hour in a 65 mile an hour zone. Mr. Kurip was the driver. (Comp.¶ 23, ¶ 25.) When Mr. Kurip refused to pull over, a high-speed chase began. Mr. Kurip drove onto the Uintah-Ouray Indian Reservation where, after ten miles and twenty minutes of pursuit, Mr. Kurip lost control of the car and skidded off the road. Mr. Kurip and Mr. Murray got out of the car and ran. Trooper Swenson chased Mr. Kurip and caught him.

Detective Vance Norton, a Vernal police detective who heard about the events on his police radio, came to the scene, got out of his car and followed Mr. Murray. When Detective Norton saw Mr. Murray, Detective Norton yelled at him to get on the ground. Detective Norton claims that instead of getting on the ground, Mr. Murray shot at him. In response, Detective Norton fired two rounds at Mr. Murray. According to Detective Norton, Mr. Murray then shot himself in the head. "Other than Detective Norton and [Mr. Murray], there were no eyewitnesses to what actually happened." (Id. ¶ 40.)

Plaintiffs allege assault and battery and wrongful death claims against Detective Norton and Vernal City. They also bring various claims under 42 U.S.C. § 1983. Relevant to the

---

[1]Because this is a motion to dismiss, all facts are taken from the Second Amended Complaint.

pending motions to dismiss are Plaintiffs' claims of unlawful extraterritorial seizure, unlawful use of excessive and deadly force, and unlawful seizure based on lack of reasonable suspicion or probable cause against Detective Vance Norton and extraterritorial seizure, unlawful seizure, and unlawful use of excessive and deadly force based on municipal/supervisory liability against Vernal City.

**ANALYSIS**

When reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the court must presume the truth of all well-pleaded facts in the complaint, but need not consider conclusory allegations. Tal v. Hogan, 453 F.3d 1244, 1252 (2006), cert. denied, 127 S. Ct. 1334 (2007); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). Conclusory allegations are allegations that "do not allege the factual basis" for the claim. Brown v. Zavaras, 63 F.3d 967, 972 (10th Cir. 1995). See also Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) ("conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based") (emphasis added). The court is not bound by a complaint's legal conclusions, deductions and opinions couched as facts. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). And although all reasonable inferences must be drawn in the non-moving party's favor, Tal, 453 F.3d at 1252, a complaint will only survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, quoted in Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007). Stating a claim under Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 129 S.

Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 555).

The court must first decide whether Plaintiffs have stated a claim for unlawful seizure of Mr. Murray and then, whether Detective Norton and Vernal City have immunity from suit either due to qualified immunity or under the Utah Governmental Immunity Act. A factor in both questions is that the relevant actions took place on the Uintah and Ouray Indian Reservation where, according to Plaintiffs "only federal and tribal law enforcement officers can exercise law enforcement powers over tribal members inside the Reservation." (Id.¶ 58.)

Seizure

Because Mr. Murray did not obey Detective Norton's commands to stop, Detective Norton did not seize Mr. Murray unless he fired the shot that killed him. "[A] 'seizure' occurs only when a fleeing person is physically touched by police or when he or she submits to a show of authority by police." Bella v. Chamberlain, 24 F.3d 1251, 1255 (10th Cir. 1994) (holding that an innocent hostage who was piloting a helicopter that helped inmates escape was not "seized" because he continued to flee even after law enforcement gunfire hit his helicopter). Even if an individual reasonably refused to submit to police authority, a failure to submit means the individual was not seized. Reeves v. Churchich, 484 F.3d 1244, 1253 (10th Cir. 2007) (holding that a woman and a girl whose duplex was surrounded by armed law enforcement were not seized because they did not submit to law enforcement authority even though their failure to submit may not have been reasonable).

Paragraphs 37-39 of the Second Amended Complaint contain the allegations about Detective Norton's interaction with Mr. Murray:

> 37. Detective Norton set off on foot and came upon the passenger who was

4

> allegedly coming around a hill to the northwest of his location. Detective Norton, who was in street clothes at the time, walked toward the passenger with his gun drawn and pointed toward the passenger, and shouted, "POLICE—GET TO THE GROUND."
> 38. Detective Norton allegedly could see something in the passenger's hand but could not tell what it was. Detective Norton allegedly saw the passenger's hand come up and heard the sound of a gunshot. Detective Norton then fired two rounds from his handgun toward the passenger.
> 39. Detective Norton alleges that the passenger then turned the gun on himself and pulled the trigger.

(Id. ¶ 37-39.)

Plaintiffs argue that there is no physical evidence showing who fired the first shot, so it is impossible to know whether Mr. Murray submitted to Detective Norton's show of force, that is, his order to stop. Plaintiffs contend that the court should draw an inference in favor of Mr. Murray because Vernal City caused the evidence to be lost.[2]

Plaintiffs set forth two alternative scenarios: Detective Norton fired the first shot and Mr. Murray returned fire or Mr. Murray shot himself to avoid an illegal arrest. Neither of these actions indicate that Mr. Murray submitted to Detective Norton's show of force.

Assuming that Detective Norton fired the shot that killed Mr. Murray, Detective Norton seized Mr. Murray. But if Mr. Murray shot himself, he was never seized because he never submitted to law enforcement authority. The court must next consider whether the seizure was lawful. In this case, the seizure may have been unlawful because it took place outside Detective Norton's jurisdiction or because it took place without probable cause. The court first addresses the legal issue of whether Detective Norton had the authority to seize Mr. Murray. The court then considers whether Detective Norton had justification to use deadly force.

---

[2] The gun and ammunition allegedly used by Mr. Murray were lost while under law enforcement control.

Extraterritorial Seizure

After reviewing the relevant law, the court concludes that Detective Norton did not have jurisdiction to seize Mr. Murray on the Uintah-Ouray Reservation because the officers were not in hot pursuit of Mr. Murray.

"Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country."  18 U.S.C. § 1152.  No law gives the state of Utah or its political subdivisions criminal jurisdiction in Indian country.  See Gardner v. United States, No. 93-4102, 1994 U.S. App. LEXIS 10090 at *10 (10th Cir. May 5, 1994).  Although the Uintah-Ouray reservation has a cooperative law enforcement agreement with the state of Utah that allowed cross-deputized officers from Utah to exercise law enforcement authority on the reservation, none of the officers involved in this incident were cross-deputized.

An arrest of a tribal member on tribal land by a state officer is unconstitutional because "[a] warrantless arrest executed outside of the arresting officer's jurisdiction is analogous to a warrantless arrest without probable cause." Ross. v. Neff, 905 F.2d 1349, 1354 (10th Cir. 1990) (holding that an Oklahoma police officer did not have jurisdiction to arrest a tribe member on tribe land for violation of Oklahoma's public intoxication ordinance); see also In re Denetclaw, 320 P.2d 697, 700 (Ariz. 1958) (holding that Arizona traffic law did not apply to roads running through the Indian reservation).  "The Supreme Court has expressly stated that state criminal jurisdiction in Indian country is limited to crimes committed 'by non-Indians against non-Indians . . . and victimless crimes by non-Indians.'" Ross, 905 F.2d at 1353 (quoting Solem v. Bartlett,

6

465 U.S. 463 (1984)).

Defendants argue that under Nevada v. Hicks, state sovereignty does not end at a reservation's borders. 533 U.S. 353, 360-61 (2001). In Hicks, the Supreme Court held that an Indian tribe lacked both "legislative authority to restrict, condition, or otherwise regulate the ability of state officials to investigate off-reservation violations of state law, [and] lacked adjudicative authority to hear respondent's claim that those officials violated tribal law in the performance of their duty." Id. at 374. But that case does not modify the holding in Ross because Hicks concerned tribal authority rather than the authority of the state. Specifically, Hicks held that the tribes cannot interfere with the state concerning areas of the state's jurisdiction: tribe members off the reservation and non-tribe members. Conversely, Ross held that the state may not interfere with the self-governance of Indian tribes by arresting tribe members on tribal land for crimes committed on tribal land.

Defendants also argue that the "hot pursuit" exception to the general jurisdictional requirement rendered his pursuit of Mr. Murray lawful. The Ross opinion expressly maintained "the Constitutional validity of extrajudicial arrests made by officers in 'hot pursuit.'" Id. at 1354 n.6. "Hot pursuit" can justify a warrantless arrest or seizure. Welsh v. Wisconsin, 466 U.S. 740, 749-50 (1984). "Hot pursuit occurs when an officer is in 'immediate or continuous pursuit' of a suspect from the scene of a crime." United States v. Jackson, 139 Fed. Appx. 83, 86 (10th Cir. 2005). Detective Norton argues that the pursuit of Mr. Kruip, who violated the law of Utah by speeding outside the boundaries of the reservation, was justified under the "hot pursuit" doctrine. An arrest is lawful under the hot pursuit doctrine if: (1) a felony was committed within the arresting officer's jurisdiction; (2) the subject attempts to flee, or at least knows he is being

7

pursued; (3) pursuit is commenced with no unreasonable delay; (4) pursuit is continuous and uninterrupted; and (5) there is a relationship in time between the commission of the offense, commencement of pursuit and the apprehension of the suspect. See State v. Santana, 427 U.S. 38, 43 (1976)."[3]

While the pursuit of Mr. Kruip may be covered under the hot pursuit doctrine because he was the driver, Mr. Murray, the passenger committed no crime off the reservation, so officers were not in hot pursuit of Mr. Murray when they entered the Uintah-Ouray Reservation. Even if the hot pursuit of Mr. Kruip could be extended to cover the seizure of Mr. Murray, officers had no probable cause to believe that Mr. Murray was involved in criminal activity. Detective Norton's only justification for suspecting Mr. Murray came from his flight from Detective Norton which occurred on tribal lands. Flight alone is not sufficient to form probable cause for arrest absent a reasonable belief that the fleeing individual is involved in criminal activity. State v. Elliott, 626 P.2d 423, 427 (Utah 1981). While disobeying a lawful order of a law enforcement officer violates Utah Code section 41-6a-209, Mr. Murray was not subject to Utah law at the time the order was given, and therefore the order for him to submit to law enforcement authority was not lawful.

But even though Detective Norton was outside his jurisdiction when he pursued Mr. Murray on the Uintah-Ouray Reservation, Mr. Murray's own actions in displaying a firearm may have created an exigent circumstance that rendered the extra-jurisdictional seizure reasonable. See Ross. v. Neff, 905 F.2d at 1354 ("Absent exigent circumstances [a warrantless arrest of a

---

[3] Plaintiffs argue that hot or fresh pursuit is Utah statutory law and thus inapplicable to the actions of law enforcement on the Uintah-Ouray Reservation. But the doctrine of hot pursuit is also a federal common law doctrine that has application here.

tribe member on tribal lands] is presumptively unreasonable.").

Reasonableness

Use of deadly force is analyzed under the Fourth Amendment. Blossom v. Yarbrough, 429 F.3d 963, 967 (10th Cir. 2005). "A police officer may reasonably use deadly force to apprehend a fleeing suspect if the officer has probable cause to believe that the suspect poses a serious threat of physical harm either to the officer or others and if, where feasible, the police warn the suspect." Id. "To state a claim under the Fourth Amendment, plaintiffs must show both that a 'seizure' occurred and that the seizure was 'unreasonable.'" Childress v. City of Arapaho, 210 F.3d 1154, 1156 (10th Cir. 2000). The court looks at the totality of the circumstances to determine whether a particular seizure is reasonable. Tennesse v. Garner, 471 U.S. 1, 8-9 (1985); Medina v. Cram, 252 F.3d 1124, 1132 (10th Cir. 2001) (noting that the court may consider an officer's reckless behavior that created the need to use force when considering the reasonableness of a seizure under the totality of the circumstances). The fact that a seizure violates state or federal statutory law is one factor in determining whether a search is reasonable under the United States Constitution. See United States v. Green, 178 F.3d 1099, 1105-06 (10th Cir. 1999) (holding that exercising law-enforcement authority outside of state-defined jurisdictional boundaries is not a federal constitutional violation where officers obtained a lawful warrant). Although the Tenth Circuit has held that a seizure of a tribe member on tribal land is presumptively unreasonable, the court must still evaluate whether exigent circumstances existed to justify the extraterritorial seizure. See United States v. Atwell, 470 F. Supp. 2d 554, 570-71 (D. Md. 2007).

The District of Maryland recently concluded that a warrantless search and arrest outside

of an officer's jurisdiction did not render the officer's actions unconstitutional. In Atwell, a military patrol officer at Fort Meade observed the defendant speeding and driving erratically. Id. at 559. The officer pursued the defendant off the military base. Id. at 560. After local law enforcement declined to execute the stop, the officer administered a field sobriety test, which the defendant failed. Id. at 560. The officer then arrested the defendant. Id. The defendant moved to suppress the search because the officer exercised law enforcement authority outside his jurisdiction without the authorization of federal or state statutory authority. Id. at 561. The court concluded that the stop was not justified under either statute or common law, but ultimately upheld the stop under the Fourth Amendment. In upholding the search, the court determined that the officer had probable cause for the stop, that the offense began in the arresting officer's jurisdiction, that the officer did not intend to act outside his territorial jurisdiction, and that the exigent circumstance of allowing a potentially drunk driver back out on the road justified the stop. Id. at 577.

Detective Norton had less justification for pursuing Mr. Murray than the officer in Atwell. He had no probable cause to believe that Mr. Murray had violated the law because Mr. Murray was not the driver of the speeding car. Neither he nor the other officers involved in the pursuit contacted the local tribal authority to inform them of the chase. Mr. Murray's offense, if he committed one, did not begin in the pursuing officers' jurisdiction, but rather when he fled the officers pursuing him on foot on the Uintah-Ouray Reservation. In fact, the officers' disregard of the jurisdictional boundaries may have contributed to the need to seize Mr. Murray. Further, the policy of encouraging the self-governance of Indian tribes weighs heavily against finding an extraterritorial seizure to be reasonable. Nonetheless, if Mr. Murray displayed, brandished, or

shot his firearm toward Detective Norton prior to Detective Norton's use of force against Mr. Murray, exigent circumstances justify Detective Norton's seizure of Mr. Murray.[4] See United States v. Chavez, 812 F.2d 1295, 1299 (10th Cir. 1987) (holding that reasonable belief that an individual poses a threat to officer safety constitutes an exigent circumstance justifying a warrantless search).

Because there are conflicting inferences to be drawn about who began shooting first, there are disputed facts about whether Detective Norton's extraterritorial seizure of Mr. Murray was justified by exigent circumstances.

Qualified Immunity

Defendants argue that they are entitled to qualified immunity because it was not clearly established at the time of the shooting that Mr. Murray was not subject to seizure by Utah law enforcement while on the Uintah-Ouray Reservation. Defendants are entitled to qualified immunity only if (1) "the defendant's actions violated a Constitutional or statutory right;" and (2) "the right was clearly established at the time of the defendant's unlawful conduct." Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1150 (10th Cir. 2006). A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Thomas v. Durastanti, No. 07-3343, 2010 U.S. App. LEXIS 11458 at * 32, 607 F.3d 655 (June 4, 2010) (internal quotations omitted). The law is clearly established if a

---

[4] Plaintiffs argue that Mr. Murray had the right to shoot at Detective Norton because he had the "right to use such force as a reasonably prudent person might do in resisting [an illegal] arrest." Bad Elk v. United States, 177 U.S. 529, 533 (1900). But shooting a gun at an officer is, as a matter of law, not a reasonably prudent amount of force to resist an illegal arrest. See Graves v. Thomas, 450 F.3d 1215, 1224 (10th Cir. 2006) (holding that an erratic high-speed chase was not reasonable resistence to an unlawful arrest).

Supreme Court or Tenth Circuit decision makes "apparent to a reasonable officer . . . that his conduct was unlawful." Id.

Defendants argue that if they were not allowed to pursue Mr. Murray on the Uintah-Ouray Reservation, the law did not clearly establish that they could not do so. They argue that Ross expressly allows state law enforcement officers to seize tribe members when exigent circumstances are present. But in this case no exigent circumstance justified the pursuit of Mr. Murray, and exigent circumstances existed only if Mr. Murray displayed, brandished, or shot his weapon at Detective Norton before Detective Norton opened fire. Defendants also argue that Hicks casts doubt on the holding in Ross. But, as discussed above, Hicks prohibits tribes from regulating outside their jurisdictional authority, but does not alter the state's jurisdiction. Hicks does not permit state law enforcement officers to pursue tribe members on tribal land for crimes committed on tribal land.

Mr. Murray's constitutional right to be free from unreasonable seizure, both based on a lack of probable cause and a lack of jurisdiction, was clearly established at the time he was allegedly seized. If Officer Norton pulled his gun on Mr. Murray prior to Mr. Murray displaying, brandishing, or shooting his firearm, Officer Norton does not have qualified immunity for his actions.

Utah Governmental Immunity Act

Defendants argue that the Utah Governmental Immunity Act bars Plaintiffs' state law claims because Mr. Murray's death arose from an assault or battery. The UGIA explicitly retains immunity for claims "if the injury arises out of, in connection with, or results from: . . . assault, battery, false imprisonment, false arrest, malicious prosecution, intentional trespass, abuse of

process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, or violation of civil rights." Utah Code Ann. § 63G-7-301(5)(b).

Plaintiffs respond that Detective Norton's actions were an intentional doing of a wrongful act for which immunity was waived under Utah Code section 63G-7-202(3)(c)(i). But there is no allegation that Detective Norton knew he was effecting an extraterritorial seizure when he shot back at Mr. Murray. Even if Detective Norton was grossly negligent in his actions, "[g]ross negligence, by definition, is not willful or intentional." Daniels v. Gamma West Brachytherapy, LLC, 2009 UT 66, ¶ 41, 221 P.3d 256. Accordingly, if the UGIA applies, the Plaintiffs' state law claims for assault and battery and wrongful death are barred.

Plaintiffs next argue that the UGIA doesn't apply to the events here because they took place outside the jurisdictional boundaries of Utah. Even in states, like Utah, where the Indian lands remain under federal jurisdiction, state law still applies under some circumstances. Organized Village of Kake et al. v. Egan, 369 U.S. 60, 67 (1962). "[T]he test of whether a state law [can] be applied on Indian reservations [is] whether the application of that law would interfere with reservation self-government." Id. (noting that the Utah constitution contains identical provisions to those construed in the case). Conversely, on tribal lands "[s]tate jurisdiction is pre-empted by the operation of federal law if it interferes or is incompatible with federal and tribal interests reflected in federal law, unless the state interests at stake are sufficient to justify the assertion of state authority." Shivwits Band of Paiute Indians v. Utah, 428 F.3d 966, 981 (10th Cir. 2005).

Plaintiffs maintain that the UGIA does not apply because Detective Norton's actions took place outside of the jurisdiction of the state of Utah, and that application of the UGIA interferes

13

with self-governance. In support of this argument, Plaintiffs urge the court to analogize this case to Nevada v. Hall, 440 U.S. 410, 422-27 (1979). In Hall, the United States Supreme Court refused to extend California's governmental immunity law to events in Nevada. But the relationship between a state and the tribal lands located within a state's borders is distinguishable from the relationship between neighboring states. Specifically, the state retains jurisdiction over non-tribe members who commit victimless crimes or crimes against other non-tribe members on tribal land. See Hicks, 533 U.S. at 361 ("State sovereignty does not end at a Reservation's borders."); MacArthur v. San Juan County, 497 F.3d 1057, 1070 (10th Cir. 2007) (holding that "the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe."). As the court has previously noted, "the immunity from court action by individuals is a critical constituent of sovereignty, both for the Tribes and the States." MacArthur v. San Juan County, 391 F.Supp. 2d 895, 1036 (D. Utah 2005) (applying the UGIA to actions of non-tribe members that took place on tribal land). The application of the UGIA does not infringe on the ability of tribes to govern themselves, but rather promotes the sovereignty of both the state and the tribe.

Because the UGIA applies to Defendants' actions on the Uintah-Ouray Reservation, the court dismisses Plaintiffs' assault and battery and wrongful death claims.

CONCLUSION

Because the State of Utah and the Vernal City Police Department are no longer named as defendants in this action, their motions to dismiss are DENIED as moot. (Dkt. Nos. 3, 25.) The court GRANTS in part and DENIES in part the motions to dismiss filed by Vance Norton and Vernal City. (Dkt. Nos. 26, 28.)

DATED this 26th day of July, 2010.

BY THE COURT:

_____
TENA CAMPBELL
Chief Judge