IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DEBRA JONES, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>VANCE NORTON, et al.,<br><br>    Defendants. | ORDER AND<br><br>MEMORANDUM DECISION<br><br><br><br>Case No. 2:09-cv-730-TC |

Defendant Blackburn Company, Inc. (Blackburn), a funeral home, has moved for summary judgment on Plaintiffs' claim of intentional infliction of emotion distress. This claim arises out of the incidents surrounding the death of Todd Murray and the subsequent preparation of his corpse for burial. Specifically, Plaintiffs claim that Blackburn's employee, Colby DeCamp, made a jagged and unsightly incision on Mr. Murray's neck that caused extreme distress to Mr. Murray's family members who attended the burial service.

Blackburn argues that Plaintiffs have not satisfied the elements of a claim for intentional infliction of emotional distress, especially the requirement that, except under particularly compelling circumstances, a plaintiff be present when the alleged conduct occurs. Blackburn also asserts that, even if an exception to this presence rule exists that would allow the court to find a claim against Mr. DeCamp, the court should not find that Blackburn is liable for the actions of its employee.

The litigation history of this case is lengthy. The Plaintiffs moved to amend their

complaint to add a claim against Mr. DeCamp himself, but the Honorable Samuel Alba denied their request. (Minute Entry, Oct. 11, 2011, Dkt. No. 146.) The court later upheld Judge Alba's decision. (Order, Mar. 14, 2012, Dkt. No. 168; Order, May 16, 2012, Dkt. No. 198.) Plaintiffs also moved to amend their complaint to add causes of action for desecration of a corpse and interference with the right of sepulcher, but Judge Alba denied their motion "on the ground that the state of Utah has not recognized these causes of actions." (Order, Oct. 21, 2011, Dkt. No. 149.)

Plaintiffs have attempted to refashion their grievance into a cause of action against Blackburn for intentional infliction of emotional distress. But Plaintiffs have not produced sufficient evidence of Mr. DeCamp's intent to harm the Plaintiffs to support an exception to the presence rule. Moreover, a reasonable jury could not find that Mr. DeCamp's conduct was egregious enough to constitute a claim for intentional infliction of emotional distress. Even if Mr. DeCamp's actions were sufficiently intentional and egregious to surmount these two bars, it is improbable that Blackburn would be liable as such actions would likely take Mr. DeCamp outside the scope of his employment. As a result, Blackburn's motion for summary judgment is GRANTED.

## BACKGROUND[1]

On April 1, 2007, Mr. Murray died from a gunshot wound to his head. Following Mr. Murray's death, his body was sent to Blackburn to be held until it could be transported to the medical examiner's office for autopsy. While Mr. Murray's body was in Blackburn's custody,

---

[1]The facts are taken from the memoranda submitted by the parties.

and not in the presence of the Plaintiffs, Mr. DeCamp made an incision above the clavicle bone.

Mr. DeCamp claims that he made this incision after law enforcement directed him to draw blood from Mr. Murray's body. (DeCamp Decl. 2-3. Dkt. No. 183-1.) But Plaintiffs dispute this fact. The Plaintiffs claim that no law enforcement officer who was present at Blackburn Mortuary during this incident has admitted to directing Mr. DeCamp to draw blood from Mr. Murray's body. (Opp. Mem., at iv, Dkt. No. 211.)

Mr. DeCamp further asserts that the incision was small, as un-invasive as possible, and of the type that was standard to draw blood from the bodies of deceased persons who have sustained significant blood loss. (DeCamp Decl. 3-4.) While Plaintiffs do not directly dispute Mr. DeCamp's characterization of his initial incision, they argue that there is no evidence of any other incision that was made to Mr. Murray's body, and they provide eyewitness testimony concerning the ultimate appearance of Mr. Murray's body at the burial service. His mother, Debra Jones, describes the cut as follows: "The gash is not small or straight, it is long and jagged, with a zig-zag appearance, and there was a heavy black string protruding from one end of the gash. The mutilation made Todd look like something out of a horror show for his burial service." (Def.'s Mem. in Supp. Mot. Summ. J., Ex. B, at 9, Dkt. No. 183-2.) Plaintiffs also provide photographs of Mr. Murray's body (see id., Ex. C, at 6-8, Dkt. No. 183-3.), but these images are too blurry and indistinct to be helpful. Blackburn argues that these photographs do not accurately demonstrate the incision that Mr. DeCamp made because they appear to show a cut that has been stitched close with a "wave stitch." Mr. DeCamp claims that he did not sew up or stitch closed the incision and that this procedure must have been performed after the body was no longer being held by Blackburn. (DeCamp Decl. 3-5.)

Finally, Mr. DeCamp states that he had never met any of the Plaintiffs, that he was not angry when he made the incision, and that he was not trying to send a message to Mr. Murray's family or to any member of the Ute Indian Tribe.  (Id.)  Plaintiffs do not provide any evidence that directly counters Mr. DeCamp's assertions, but they argue that the gash speaks for itself, contending that the mere existence of the gash and its appearance would allow a reasonable jury to infer that Mr. DeCamp must have been trying to harm Plaintiffs by performing such an incision.

## ANALYSIS

To succeed on a claim of intentional infliction of emotional distress, a plaintiff must demonstrate that the defendant

> intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality.

Franco v. Chruch of Jesus Christ of Latter-day Saints, 21 P.3d 198, 206 (Utah 2001).  The Plaintiffs here emphasize the language, "where any reasonable person would have known that such would result."

But a heightened standard applies if a plaintiff was not physically present when the challenged actions occurred.  This standard was discussed in Hatch v. Davis, in which the Utah Supreme Court held that "conduct which occurs outside the presence of a plaintiff may not contribute to a claim of intentional infliction of emotional distress except under particularly compelling circumstances."  Hatch v. Davis, 147 P.3d 383, 388 (Utah 2006).  The court continued:

4

> In considering whether conduct triggers the exception [to the "presence" rule], a finder of fact may consider (1) the relationship of the target of the conduct to the plaintiff, (2) the relationship between the person committing the conduct and the plaintiff, and (3) the egregiousness of the conduct. Finally, (4) a plaintiff must establish that the conduct was undertaken, in whole or in part, with the intention of inflicting injury to the absent plaintiff.

Id. (cited in Cabaness v. Thomas, 232 P.3d 486, 498 (Utah 2010)).

Blackburn argues that it is impossible for Plaintiffs to satisfy the fourth element of this standard because Mr. DeCamp had never met the Plaintiffs before he made the incision on Mr. Murray's body. In addition, Blackburn claims that the only evidence of intent that Plaintiffs have adduced—that the gash speaks for itself—is not strong enough to survive a motion for summary judgment.

The court agrees that Plaintiffs' evidence, even when taken in its most favorable light, is weak. Even assuming that Mr. DeCamp was not asked by any law enforcement to perform the blood draw, that the incision was not authorized under any other policy or practice, and that the cuts made by Mr. DeCamp were not altered by any third parties before the burial service, Mr. DeCamp's actions do not necessarily evince an intent to inflict injury on the Plaintiffs. A reasonable jury could not find the requisite intent from these facts, especially in the absence of any evidence of motivation besides Plaintiffs' own speculation that Mr. DeCamp may have been prejudiced against Native Americans.

Even if the court were to rule that a reasonable jury could find that Mr. DeCamp's conduct was intended to harm the Plaintiffs, the other three factors in the Hatch test do not, taken together, demonstrate "particularly compelling circumstances." The first factor, the relationship of the target of the conduct to the plaintiff, is strong enough: Mr. Murray was the son of the

5

Plaintiffs in this case. But the second factor, the relationship between the person committing the conduct and the plaintiff, is non-existent. Mr. DeCamp had never met the Plaintiffs before these events occurred. And the third factor, the egregiousness of the conduct, weighs against the Plaintiffs. Plaintiffs have provided only a few blurry photographs to demonstrate the extent of damage that was caused by the incision on Mr. Murray's neck. But the Defendants have testified that the cut made by Mr. DeCamp was the same incision that funeral homes use to embalm bodies (such as Mr. Murray's, which was later embalmed). Plaintiffs have not provided any evidence of what a normal embalming cut looks like or how it differs from the gash found on Mr. Murray's body.

While this gash may have been extremely upsetting, Mr. DeCamp's actions do not rise to the type of conduct that courts have found to constitute egregious conduct. The Utah Supreme Court gave an instance of facts that would justify an exception to the presence rule:

> Unusually offensive behavior can and should trigger the exception. An example of such an egregious case is R.D. v. W.H., 875 P.2d 26 (Wyo. 1994), where a stepparent provided the means for suicide to his stepdaughter, and she subsequently did commit suicide outside of the presence of her husband and small child. The Wyoming court found that the facts fell within the exception to the "presence" rule because the plaintiffs were exposed to the "immediate aftermath of the tragic results of Appellee's outrageous conduct." Id. at 34.

Hatch, 102 P.3d at 388. Plaintiffs in this case have not provided evidence that Mr. DeCamp's actions were "unusually offensive behavior" on the same level as providing the means to commit suicide.

Plaintiffs argue that Hatch requires a jury to make the determination of whether certain actions constitute egregious conduct and whether a defendant acts with the requisite intent. But in Hatch, the record in front of the Supreme Court was so deficient that there was "simply no

6

available method" to determine whether there was sufficient evidence to find an exception to the presence rule. Id. at 387. And Cabaness makes clear that, in the absence of any direct evidence that the plaintiff intended to inflict injury on the defendant, the court may conclude that the presence rule should operate to bar plaintiff's claim. Cabaness, 232 P.3d at 498. At any rate, if no reasonable jury could find that particularly compelling circumstances exist to justify an exception to the presence rule, then the court must dismiss Plaintiffs' claim.

The court does not find that it is impossible for the desecration of a corpse to give rise to a cause of action for intentional infliction of emotional distress. Utah has no separate cause of action for this wrong and Hatch comments that the exception to the presence rule for intentional infliction of emotional distress claims is a reflection of "the law's recognition that certain conduct not committed in one's presence can nevertheless be so injurious to an individual [. . .] that our societal values would be offended were we not to provide a remedy at law." Id. at 388. But the key requirement is that defendant's actions are "sufficiently egregious," id. at 389, and this requirement has not been satisfied by the evidence before the court.

Because the court holds that Plaintiffs have not produced sufficient evidence to bring a claim for intentional infliction of emotional distress, the court need not reach the issue of whether Blackburn is liable for its employee's actions. Similarly, Plaintiffs' request for punitive damages is moot.

Finally, Plaintiffs make a number of statements about Utah state regulations and laws concerning blood draws and funeral homes. Plaintiffs assert that Blackburn had no authority to perform a blood draw, especially as this procedure was to be performed during the autopsy. But this argument fails in the context of a claim for intentional infliction of emotional distress.

Whether Mr. DeCamp had the authority to make the incision sheds no light on his state of mind and his intent to cause Plaintiffs harm. Plaintiffs argue that any actions performed illegally should be viewed as egregious by the court, but illegal acts do not necessarily meet this standard. At any rate, Blackburn claims that it is a custom or policy for rural funeral homes to assist law enforcement officials by performing these acts, and Plaintiffs have not provided compelling evidence to the contrary.

## ORDER

For the reasons discussed above, the court GRANTS Blackburn's Motion for Summary Judgment (Dkt. No. 182).

SO ORDERED this 26th day of July, 2012.

BY THE COURT:

*Tena Campbell*

_____
TENA CAMPBELL
United States District Judge