**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**
**CENTRAL DIVISION**

| | |
|---|---|
| DEBRA JONES, et al.,<br>　　　　　　　Plaintiffs,<br><br>vs.<br><br>VANCE NORTON, et al.,<br>　　　　　　　Defendants. | ORDER AND MEMORANDUM DECISION<br><br>No. 2:09-cv-730<br>Judge Tena Campbell |

## I. INTRODUCTION

Mr. Todd R. Murray, a member of the Ute Indian Tribe, died of a gunshot wound while within the boundaries of the Uintah and Ouray Indian Reservation. The gunshot wound was the final event in a lengthy police chase conducted by various state, county, and city agencies. Plaintiffs—comprising Mr. Murray's estate and his biological parents—brought suit alleging a number of violations under federal and state law. In Plaintiffs' Eighth Cause of Action, they contend that the pursuit of Mr. Murray and his subsequent death were violations of the Ute Treaty of 1868 (Ute Treaty), and that those violations are actionable under 42 U.S.C. § 1983 (2012).

There are a number of Defendants, one group of which includes Vance Norton, Anthoney Byron, Bevan Watkins, Troy Slaugh, Vernal City, and Uintah County, Utah (Vernal/Uintah Defendants). The Vernal/Uintah Defendants have moved for judgment on the pleadings on the Plaintiffs' Eighth Cause of Action (Docket No. 240), arguing that Mr. Murray's rights under the Ute Treaty cannot be vindicated by § 1983. For the reasons set forth below, the court agrees with the Vernal/Uintah Defendants, and HEREBY dismisses with prejudice Plaintiffs' Eighth Cause of Action.

## II.  ANALYSIS

Section 1983 gives a civil remedy to persons who have been deprived of any federal or constitutional right, privilege, or immunity by a government actor.  See 42 U.S.C. § 1983 (2012). Section 1983 is not itself the source of rights; instead § 1983 provides a method for the vindication of rights conferred elsewhere in the United States Constitution or federal laws.  See Gonzaga Univ. v. Doe, 536 U.S. 273, 283–85 (2002).  Therefore, in order to bring a viable claim under § 1983, Plaintiffs must show Mr. Murray was deprived of a right secured by the Constitution or by federal law.  See id. at 284–85.

That analysis proceeds in two steps: first, Plaintiffs must show that the Ute Treaty is considered binding federal law; and second, Plaintiffs must show that the Ute Treaty secures a personal right that entitles Mr. Murray to a private remedy against the Vernal/Uintah Defendants. See Jogi v. Voges, 480 F.3d 822, 827–28 (7th Cir. 2007); see also John T. Parry, A Primer on Treaties and § 1983 after Medellín v. Texas, 13 Lewis & Clark L. Rev. 35, 70–72 (2009) (summarizing methods used by courts to determine whether treaty rights can be vindicated by a § 1983 action).

Plaintiffs contend that the Ute Treaty is binding federal law because treaties are considered the supreme law of the land.  Plaintiffs claim that the so-called "Bad Man" clause of the Ute Treaty gives tribe members a right to be free from harms caused by "bad men among the whites" while on tribal lands.  (Pls.' Third Am. Compl. ¶ 130, Docket No. 170.)  They argue that the Ute Treaty gave Mr. Murray a personal remedy against the Vernal/Uintah Defendants for the wrongs he suffered, including being pursued and assaulted in a way that led to his wrongful death.

Plaintiffs' are correct in their assertion that the Ute Treaty is a source of binding federal law. Plaintiffs, however, are not correct in assuming that the right they wish to vindicate is secured by the Ute Treaty. Their interpretation conflicts with the plain language of the treaty and with precedent that has interpreted such language in other cases. The Ute Treaty only secures a right to seek redress from the United States Government—it does not secure a right to be free from the torts of private individuals.

A.  **The Ute Treaty is a Source of Federal Law**

The Supremacy Clause states that "all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land . . . ." U.S. Const. art. VI, cl. 2. The Supreme Court has noted that although

> [a] treaty is primarily a contract between independent nations. . . . a treaty may also contain provisions which confer rights upon the citizens or subjects of one of the nations residing in the territorial limits of the other, which partake of the nature of municipal law, and which are capable of enforcement as between private parties in the courts of the country."

Head Money Cases, 112 U.S. 580, 598 (1884). Depending on the nature of the treaty, its provisions may be considered binding federal law. See id. For example, treaties which are "self-executing," or in other words operate "without the aid of any legislative provision," have long been held to be binding as federal law because they are "equivalent to an act of the legislature." Medellín v. Texas, 552 U.S. 491, 504–06 (2008) (quoting Foster v. Neilson, 27 U.S. (2 Pet.) 253, 315 (1829), overruled on other grounds, United States v. Percheman, 37 U.S. (7 Pet.) 51 (1833)).

In order to decide whether a treaty is self-executing, courts "may look beyond the written words [of the treaty] to the history of the treaty, the negotiations, and the practical construction

adopted by the parties." Choctaw Nation of Indians v. United States, 318 U.S. 423, 432 (1943) (citations omitted). Moreover, when construing Indian treaties, courts should do so "in the sense in which the Indians understood them and 'in a spirit which generously recognizes the full obligation of this nation to protect the interests of a dependent people.'" Id. (1943) (quoting Tulee v. Washington, 315 U.S. 681, 684 (1942)).

The "Bad Man" clause in the Ute Treaty appears to be a self-executing agreement between the signatory parties. The Ute Treaty was entered into at a time of tension between westward-expanding frontiersmen and the Native Americans inhabitants. See Lillian Marquez, Making Bad Men Pay: Recovering Pain and Suffering Damages for Torts on Indian Reservations under the Bad Men Clause, 20 Fed. Cir. B.J. 609, 610–13 (2010–2011). To reduce friction and keep the peace between the Native American nations and the citizens of the United States, the United States negotiated various peace treaties. Id. Nine of those treaties—including the Ute Treaty—contained a clause designed to remedy abuses against the Native Americans perpetrated by "bad men among the whites." See id.; Brown v. United States, 32 Ct. Cl. 432, 435–36 (1897). This "Bad Man" clause appears in substantially the same form in each of the nine treaties, Garreaux v. United States, 77 Fed. C. 726, 735 (2007), and as contained in the Ute Treaty, the clause states:

> If bad men among the whites or among other people, subject to the authority of the United States, shall commit any wrong upon the person or property of the Indians, the United States will, upon proof made to the agent and forwarded to the Commissioner of Indian Affairs at Washington City, proceed at once to cause the offender to be arrested and punished according to the laws of the United States, and also re-imburse the injured person for the loss sustained.

Treaty with the Ute, Mar. 2, 1868, art. 6, 15 Stat. 619, 620 (1868). As stated by the Federal

Circuit Court of Appeals, the Bad Man clause was a pact "between two nations, and each one promised redress for wrongs committed by its nationals against those of the other nation." Richard v. United States, 677 F.3d 1141, 1148 (Fed. Cir. 2012) (quoting Tsosie v. United States, 825 F.2d 393, 400 n.2 (Fed. Cir. 1987)). The plain language of the Ute Treaty indicates that from the moment the treaty was signed, Native Americans could petition the United States for redress from wrongs committed by bad men among the whites. That language, when viewed with the broad presumption courts use when interpreting Indian treaties, indicates that the portion of the Ute Treaty in question was self-executing, and is therefore a source of binding federal law.

**B. The Ute Treaty Does not Secure A Right to be Free from the Torts of "Bad Men"**

But even if the Ute Treaty is a source of binding federal law, that is not enough to show Plaintiffs may bring a § 1983 claim based on violations of the Ute Treaty. Plaintiffs must also show that a personal right can be inferred from the Ute Treaty, and that Mr. Murray is entitled to a private remedy against the Vernal/Uintah Defendants. See Jogi v. Voges, 480 F.3d 822, 827–28 (7th Cir. 2007).

Courts apply a "strict test" to determine whether a statute (or in this case, a treaty) confers an individual right that may be enforced through § 1983. Id. at 833; see Gonzaga Univ. v. Doe, 536 U.S. 273, 283–84 (2002). The plaintiff must show (1) that the statute grants private rights to an identifiable class, and (2) that the text of the statute is phrased in terms of the persons benefitted. Gonzaga, 536 U.S. at 283–84.

Plaintiffs have not met this test. Although it can be argued the Ute Treaty confers an individual right to bring redress against the United States, it does not confer an individual right to be free from the torts of "bad men among the whites." As noted above, the Bad Man clause was

5

a pact "between two nations, and each one promised redress for wrongs committed by its nationals against those of the other nation." Richard , 677 F.3d at 1148 (quoting Tsosie, 825 F.2d at 400 n.2). In other words, the Bad Man clause gives Native Americans a right to seek redress directly from the United States for wrongs that are perpetrated by U.S. citizens against the a tribe member while on tribal land. See id. at 1153; Elk v. United States, 87 Fed. Cl. 70, 79 (Fed. Cl. 2009) ("[T]he 1868 Treaty's 'bad men' provision created an individual third-party contractual right through which an individual claimant could directly pursue a suit against the United States."). That is not the right asserted by the Plaintiffs. The Ute Treaty does not confer upon tribe members the right to be free from torts; it confers upon them the right to seek redress after the tort has happened—and not from the tortfeasor, but from the United States. As such, the Plaintiffs have failed to carry their burden to show that the Ute Treaty confers upon Mr. Murray a right to be free from the torts they allege were committed upon him by the Uintah/Vernal Defendants.

### III. CONCLUSION

For the foregoing reasons, the Bad Man clause of the Ute Treaty does not give Mr. Murray a right that can be vindicated under § 1983. Plaintiffs' Eighth Cause of Action, alleging violations of § 1983 based on the Ute Treaty, is HEREBY dismissed with prejudice.

SO ORDERED this 28th day of March, 2013

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge